## BLANCHARD & FARNHAM *vs.* THE NEW JERSEY STEAMBOAT COMPANY. (*a*)

In an action for damages caused by a collision between vessels, a witness being examined as to the location and position of the vessels at the time, and as to the extent of navigable water on each side of them, and having giving the distances; *held*, that it was proper for him to state the fact whether or not there was deep water on each side for the vessels to pass safely without grounding.

A witness, having testified that vessels did not all carry the same signal lights, was asked, "What differences are there?" *Held*, that the question was immaterial, the point being what signal lights the plaintiffs' boat carried, and whether they were sufficient, as an admonition to other vessels.

A witness was asked: "Was there a custom, among pilots, at flood-tide, as to which side of the channel vessels were to go down in that neighborhood?" He answered: "They went down further to the east than I was." *Held*, that the evidence was not objectionable; as it tended to show the true position of the vessel, as to navigable water. That even if the answer tended to show a custom, it was competent; notwithstanding the mode of navigation is regulated by law.

(*a*) Affirmed by Court of Appeals. 59 *N. Y.*, 292.

A witness, on his cross-examination by the defendant's counsel, having spoken as to the value of the vessel sunk, and being questioned as to his competency to testify on that subject, stated that he had known of the sale of various steamboats, naming one — the M. — whose price was $3,500. On his re-examination he was asked the *value* of the M., and answered " $16,000." *Held,* that the defendant's counsel having opened the subject of the value of the M., and drawn out the fact, from the witness, that the price of that vessel, on the sale, was $3,500, the subject was opened to the plaintiffs to ask of the witness her real value.

A wrecker, who has been in the business for twenty years, has raised sunken vessels, has superintended an examination of a particular vessel after she was sunk, and made soundings around her, may be asked whether she could be raised, and what it would cost to get her up.

Where a witness for the defendant had, on his examination, denied the making of certain statements, pertinent to the issue, his attention being called to the time, place and occasion; *held,* that it was competent for the plaintiff to prove that he did make them, for the purpose of affecting his credibility.

THIS is an appeal from a judgment directed by a referee, to whom the action was referred to hear and determine it. (*S. C.,* briefly reported, 3 *Thomp. & C.,* 771.)

*By the Court,* BOCKES, J. The plaintiffs were the owners of the steam tug Telegraph, which, on its downward trip on the Hudson river, with a tow attached, collided with the defendant's steamer, the Drew, proceeding in the opposite direction; by which collision the plaintiffs' vessel was wrecked and became a total loss. A great amount of evidence was given before the referee, on which he found, that the Telegraph was struck and run down by the fault and negligence of the agents and servants of the defendant, without fault or negligence on the part of the plaintiffs contributing to the injury; and he awarded judgment in favor of the latter for the value of their vessel so destroyed.

The referee's report or decision gives the facts and circumstances attending the collision, as found by him, in detail and minutely; which, if supported by the proof, are abundantly sufficient to justify the recovery.

It is a common occurrence, on the trial of actions where negligence is charged, that the evidence is conflicting — oftentimes strangely so, and to an extent and with a directness leading to the almost necessary conclusion that truth, by some of the witnesses, is little regarded or purposely colored. This case is not an exceptionable one in this respect. The plaintiffs' witnesses are distinct and uniform in their statements of the occurrences attending the collision of the vessels, and fully support the findings of the referee, on which the right of recovery is predicated.

On the other hand the defendant's witnesses dispute those statements quite unequivocally in so far as they show, or tend to show, negligence attributable to the latter. According to their evidence, the officers and crew of the Telegraph were in fault, rather than those in charge of the Drew. It then became the duty of the referee, and it was peculiarly within his province, to find and certify the facts on this conflicting proof; and the court, on appeal, must accept his findings as conclusive. As above stated, his findings of fact taken as true, abundantly sustain the recovery; and unless some error was committed by him in the reception or rejection of evidence the judgment must be affirmed.

The case will now be considered on the rulings of the referee on questions of evidence.

(1.) The first objection to which our attention is called was interposed to a question by the plaintiffs' counsel as follows: "Was there any difficulty in the Drew passing west of the Telegraph?" The witness answered, "No, sir; west of the Telegraph the Drew had 1,400 or 1,500 feet, or more, in which to pass." Question — "Could she have passed east of the Telegraph safely?" Answer — "No, sir." Now it must be held in mind that the witness was being examined as to the location and position of the vessels in navigable waters — that is, as to the extent of navigable water on each side

of them. In his answer he gave distances ; and it was proper for the witness to state the fact whether or not there was deep water on each side for the vessels to pass safely without grounding.

The fact in this regard was what was sought by the examination ; and in this view there was no error in the admission of the evidence.

. (2.) A witness had testified that towing vessels did not all carry the same signal lights. The question was then asked, "What differences are there?" To which the plaintiff's counsel objected as immaterial. The objection was sustained. The question was plainly immaterial. What signal lights the Telegraph carried, and whether they were sufficient as an admonition to other vessels, was the question, in so far as signal lights were concerned. The difference in signal lights on other towing vessels was wholly unimportant. No harm resulted from this ruling.

(3.) The question was put by the plaintiff's counsel as follows : "Was there a custom among pilots, at flood-tide, as to which side of the channel vessels were to go down, in that neighborhood?" The defendant's counsel objected, and the objection was overruled. The answer was, "They went down further to the eastward than I was." This was not an answer to the question, except inferentially. The answer is in effect that vessels did pass down farther east than the point at which they were passing. The evidence was not objectionable, as it tended to show the true position of the vessel as to navigable water. But even if the answer tended to show a custom, it was competent, notwithstanding, as was insisted in the objection, that the navigation was regulated by law. It was competent for the plaintiffs, who were charged with running their vessel out of place, to show that this was not so ; but that she was at the time of the injury, where vessels passing down the river usually ran. The admission of the answer to the question is no ground of error.

(4.) The defendant's counsel on cross-examination of a witness, who spoke to the value of the Telegraph, questioned him as to his competency to testify on that subject. The witness stated that he had known of the sale of various steamboats; and among them mentioned the Metamora; and said "her price was $3,500." Then on re-examination on that point, he was asked the value of the Metamora. He answered, "$16,000." The defendant's counsel had opened the subject of the value of the Metamora. He had drawn out the fact from the witness that the price of that vessel on the sale to which the witness had referred, was $3,500. The subject was now opened to the other side to ask of the witness her real value.

But in the way in which the subject came up, the entire matter of inquiry in regard to the value of the Metamora was simply harmless.

(5.) A wrecker, who had been in the business for twenty years — had raised vessels — had made attempts to raise others and found it impracticable — who had known the Telegraph for twenty-five years — had superintended an examination of the vessel after she was sunk, and made soundings around her, was asked, whether she could be raised; and what it would cost to get her up. He answered, against objection by defendant's counsel, that it would be impossible to raise her whole, as she was half cut in two; and, in substance, that it would cost all the vessel was worth to raise her. He was shown competent, beyond question, to give this evidence. It is difficult to see in what respect he was ignorant on the subject as to which he was interrogated, or how he was deficient in practical experience. The evidence was plainly admissible.

(6.) The bill of sale of one-third of the vessel by Pratt to the plaintiffs, although at first excluded, was afterwards received in evidence. Therefore the error in

rejecting it, (if that was error,) was obviated by its subsequent admission.

(7.) The evidence given to contradict Best, one of defendant's witnesses, was competent for that purpose. Best, on his examination, had denied the making of certain statements pertinent to the issue, his attention being called to the time, place and occasion. It was therefore competent for the plaintiffs to prove that he did make them, for the purpose of affecting his credibility.

The case has been above considered on each and every point of alleged error. In our opinion, the findings of fact by the referee are neither without evidence to support them, nor are they manifestly against the weight of evidence. The proof was voluminous, and, on most of the material points, conflicting. But for anything appearing to the contrary, the evidence was fairly considered and proper weight given it. Nor was any evidence erroneously admitted or rejected on the trial.

The judgment must be affirmed with costs.

Judgment affirmed.(b)

(b) Affirmed by Court of Appeals. 59 *N. Y.*, 771.